✎JS 44   (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Shaquill Battle

## DEFENDANTS
Joseph H. Noeth, as Acting Warden, Attica Correctional Facility

**(b)** County of Residence of First Listed Plaintiff   Wyoming
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Wyoming
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Lee Koch, Koch Law, PLLC, 514 Fifth Avenue, Seventeen Floor, New York, New York, 10175

Attorneys (If Known)
Monroe County District Attorney's Office, 47 S. Fitzhugh St., Rochester, NY 14614 (585) 753-4500; New York Attorney General, 144 Exchange Blvd., Ste. 200, Rochester, NY 14614 (585) 546-7514

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

- ❒ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ❒ 2  U.S. Government Defendant
- ❒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❒ 1 | ❒ 1 | Incorporated or Principal Place of Business In This State | ❒ 4 | ❒ 4 |
| Citizen of Another State | ❒ 2 | ❒ 2 | Incorporated and Principal Place of Business In Another State | ❒ 5 | ❒ 5 |
| Citizen or Subject of a Foreign Country | ❒ 3 | ❒ 3 | Foreign Nation | ❒ 6 | ❒ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

### CONTRACT
- ❒ 110 Insurance
- ❒ 120 Marine
- ❒ 130 Miller Act
- ❒ 140 Negotiable Instrument
- ❒ 150 Recovery of Overpayment & Enforcement of Judgment
- ❒ 151 Medicare Act
- ❒ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ❒ 153 Recovery of Overpayment of Veteran's Benefits
- ❒ 160 Stockholders' Suits
- ❒ 190 Other Contract
- ❒ 195 Contract Product Liability
- ❒ 196 Franchise

### REAL PROPERTY
- ❒ 210 Land Condemnation
- ❒ 220 Foreclosure
- ❒ 230 Rent Lease & Ejectment
- ❒ 240 Torts to Land
- ❒ 245 Tort Product Liability
- ❒ 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
- ❒ 310 Airplane
- ❒ 315 Airplane Product Liability
- ❒ 320 Assault, Libel & Slander
- ❒ 330 Federal Employers' Liability
- ❒ 340 Marine
- ❒ 345 Marine Product Liability
- ❒ 350 Motor Vehicle
- ❒ 355 Motor Vehicle Product Liability
- ❒ 360 Other Personal Injury

**PERSONAL INJURY**
- ❒ 362 Personal Injury - Med. Malpractice
- ❒ 365 Personal Injury - Product Liability
- ❒ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ❒ 370 Other Fraud
- ❒ 371 Truth in Lending
- ❒ 380 Other Personal Property Damage
- ❒ 385 Property Damage Product Liability

### CIVIL RIGHTS
- ❒ 441 Voting
- ❒ 442 Employment
- ❒ 443 Housing/ Accommodations
- ❒ 444 Welfare
- ❒ 445 Amer. w/Disabilities - Employment
- ❒ 446 Amer. w/Disabilities - Other
- ❒ 440 Other Civil Rights

### PRISONER PETITIONS
- ❒ 510 Motions to Vacate Sentence

**Habeas Corpus:**
- ☒ 530 General
- ❒ 535 Death Penalty
- ❒ 540 Mandamus & Other
- ❒ 550 Civil Rights
- ❒ 555 Prison Condition

### FORFEITURE/PENALTY
- ❒ 610 Agriculture
- ❒ 620 Other Food & Drug
- ❒ 625 Drug Related Seizure of Property 21 USC 881
- ❒ 630 Liquor Laws
- ❒ 640 R.R. & Truck
- ❒ 650 Airline Regs.
- ❒ 660 Occupational Safety/Health
- ❒ 690 Other

### LABOR
- ❒ 710 Fair Labor Standards Act
- ❒ 720 Labor/Mgmt. Relations
- ❒ 730 Labor/Mgmt.Reporting & Disclosure Act
- ❒ 740 Railway Labor Act
- ❒ 790 Other Labor Litigation
- ❒ 791 Empl. Ret. Inc. Security Act

### IMMIGRATION
- ❒ 462 Naturalization Application
- ❒ 463 Habeas Corpus - Alien Detainee
- ❒ 465 Other Immigration Actions

### BANKRUPTCY
- ❒ 422 Appeal 28 USC 158
- ❒ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- ❒ 820 Copyrights
- ❒ 830 Patent
- ❒ 840 Trademark

### SOCIAL SECURITY
- ❒ 861 HIA (1395ff)
- ❒ 862 Black Lung (923)
- ❒ 863 DIWC/DIWW (405(g))
- ❒ 864 SSID Title XVI
- ❒ 865 RSI (405(g))

### FEDERAL TAX SUITS
- ❒ 870 Taxes (U.S. Plaintiff or Defendant)
- ❒ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- ❒ 400 State Reapportionment
- ❒ 410 Antitrust
- ❒ 430 Banks and Banking
- ❒ 450 Commerce
- ❒ 460 Deportation
- ❒ 470 Racketeer Influenced and Corrupt Organizations
- ❒ 480 Consumer Credit
- ❒ 490 Cable/Sat TV
- ❒ 810 Selective Service
- ❒ 850 Securities/Commodities/ Exchange
- ❒ 875 Customer Challenge 12 USC 3410
- ❒ 890 Other Statutory Actions
- ❒ 891 Agricultural Acts
- ❒ 892 Economic Stabilization Act
- ❒ 893 Environmental Matters
- ❒ 894 Energy Allocation Act
- ❒ 895 Freedom of Information Act
- ❒ 900 Appeal of Fee Determination Under Equal Access to Justice
- ❒ 950 Constitutionality of State Statutes

## V. ORIGIN   (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ❒ 2 Removed from State Court
- ❒ 3 Remanded from Appellate Court
- ❒ 4 Reinstated or Reopened
- ❒ 5 Transferred from another district (specify)
- ❒ 6 Multidistrict Litigation
- ❒ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing **(Do not cite jurisdictional statutes unless diversity)**:
28 U.S.C. 2254

Brief description of cause:
Petition for writ of habeas corpus by state inmate

## VII. REQUESTED IN COMPLAINT:
❒ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ❒ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE _____

SIGNATURE OF ATTORNEY OF RECORD
/s/ Lee Koch

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

| Print | Save As... | Export as FDF | Retrieve FDF File | Reset |

LEE KOCH (State Bar No. 5387345)
KOCH LAW, PLLC
521 Fifth Avenue
Seventeenth Floor
New York, NY 10175
1-844-562-4529
1-646-480-661
lee@koch.law

Attorney for Petitioner

## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF NEW YORK

SHAQUILL BATTLE,

        Petitioner,

  vs.

JOSEPH H. NOETH, as Acting Warden,
Attica Correctional Facility,

        Respondent.

Case No.:

**Petition for Writ of Habeas Corpus by a Person in State Custody Under 28 U.S.C. § 2254; Memorandum of Points and Authorities in Support Thereof.**

Petitioner, Shaquill Battle (hereinafter "Petitioner"), through undersigned counsel, files this Verified Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, and in support thereof, avers as follows:

### A. PROCEDURAL HISTORY

1. Petitioner is Shaquill Battle.

2.      Petitioner is unlawfully confined in the Attica Correctional Facility, pursuant to a judgment of the Monroe County Court in *People v. Battle*, indictment number 2013-1092A.

3.      The Attica Correctional Facility is located at 639 Exchange Street Road, Attica, NY 14011.

4.      Joseph H. Noeth is the acting warden of the Attica Correctional Facility.

5.      By way of indictment, the People charged Petitioner, as well as Christopher Carter and Dwayne Tucker, at count one with intentional murder (New York Penal Law ["P.L."] §§ 20.00 and 125.25(A)(3)) and at count two with felony murder (*id.*)

6.      The jury acquitted Petitioner of count one but convicted him of count two.[1]

7.      On June 23, 2015, Petitioner was sentenced to twenty-five years to life imprisonment.

8.      Petitioner filed a timely appeal, and on December 23, 2021, the New York Supreme Court, Appellate Division, Fourth Department, affirmed the judgment at case number KA 15-01127.[2]

9.      In the New York Supreme Court, Appellate Division, Fourth Department, Petitioner raised the following issues: (1) the prosecutor failed to prove that Petitioner was guilty of felony murder; (2) the trial court erred by refusing to suppress Petitioner's statements to police; (3) the trial court erroneously denied Petitioner's repeated requests to

---

[1] Petitioner ultimately represented himself at trial.
[2] On appeal, Petitioner was represented by David M. Abbatoy, Jr., 45 Exchange Boulevard, Suite 925, Rochester, NY 14614.

represent himself; (4) the prosecutor violated Petitioner's right to testify in his own defense, his right to silence, and his right to be free from unreasonable searches by cross-examining regarding Petitioner's refusal to submit to a warrantless DNA test; and (5) the trial court violated Petitioner's right to testify in his own defense by instructing the jury that Petitioner was an "interested witness."

10. On July 21, 2022, the New York Court of Appeals denied Petitioner's application for leave to appeal at case number 38 N.Y.3d 1132.

11. In his application for leave to appeal, Petitioner raised the following issues for the court's prospective resolution: (1) whether an accomplice's accusation meets the definition of a "reliable" source to justify an arrest; (2) whether an appellate court can conduct a weight of the evidence review regarding a charge of felony murder based on a robbery when the trial court fails to charge the jury with the definition of robbery; and the remainder of the issues raised in the New York Supreme Court, Appellate Division, Fourth Department

## B. FACTUAL HISTORY

12. The following facts are largely replicated from Petitioner's opening brief on direct appeal:

> The prosecution alleged that Petitioner, Christopher Carter, and Dwayne Tucker killed a person named Jemel Lockhard during a robbery at Lockhart's home in Rochester on October 9, 2013 (Trial Minutes ["T"] at 435-450 [prosecutor's opening statement]).

> The jury acquitted Petitioner of intentional murder but convicted him of felony murder (T 1569). This presented a problem of proof for the People because it was undisputed that the people who killed Lockhart left behind an enormous amount of valuables, including jewelry, watches, about $4,000 in

cash, drugs (cocaine and marijuana), and a portable safe (T 725, 761, 980). Indeed, the proof at trial showed that Carter and Tucker planned out the killing days in advance and did not have any economic motive for the crime.

Petitioner was not included in any of Carter and Tucker's text messages regarding this plan (T 1507 [prosecutor's concession in summation that Petitioner was not involved in planning]). Although Petitioner admitted that he was in the car with Tucker and Carter when they went to Lockhart's house to kill him, there was no evidence that Petitioner ever went inside the home or knew why Carter and Tucker went to Lockhart's house that day. There was no DNA or fingerprint evidence linking Petitioner to the inside of the home (T 1018, 1020, 1164-1175). However, the police recovered Carter's and Tucker's DNA from several items associated with the killing, including a bloody glove (Carter) and a roll of duct tape (Tucker) (T 1157, 1164).

Petitioner admitted in his own testimony that he was outside of the house when the shooting occurred and that he fled the scene after hearing gunshots (T 1380). He also admitted to initially lying to the police during his interrogation because he did not want to implicate his friends in the crime (T 1378, 1385).

## C.     CLAIMS FOR RELIEF

## I.     CLAIM ONE

13.     Paragraphs 1 through 12 are hereby incorporated by reference.

14.     Petitioner was denied his federal constitutional right to due process under the Fifth, Sixth, and Fourteenth Amendments where the People failed to prove that Petitioner was guilty of felony murder.

15.     Because Petitioner's current incarceration is unlawful and unconstitutional, this Honorable Court should grant the within Writ and release Petitioner.

16.     The portion of the attached Memorandum of Points and Authorities, including all facts and arguments therein, related to Claim One is hereby incorporated by reference.

## II.  CLAIM TWO

17.  Paragraphs 1 through 16 are hereby incorporated by reference.

18.  Petitioner was denied his federal constitutional right to due process under the Fifth, Sixth, and Fourteenth Amendments where the trial court failed to suppress Petitioner's statements to police.

19.  Because Petitioner's current incarceration is unlawful and unconstitutional, this Honorable Court should grant the within Writ and release Petitioner.

20.  The portion of the attached Memorandum of Points and Authorities, including all facts and arguments therein, related to Claim Two is hereby incorporated by reference.

## III.  CLAIM THREE

21.  Paragraphs 1 through 20 are hereby incorporated by reference.

22.  Petitioner was denied his federal constitutional right to due process under the Fifth, Sixth, and Fourteenth Amendments where the trial court erroneously denied Petitioner's repeated requests to represent himself.

23.  Because Petitioner's current incarceration is unlawful and unconstitutional, this Honorable Court should grant the within Writ and release Petitioner.

24.  The portion of the attached Memorandum of Points and Authorities, including all facts and arguments therein, related to Claim Three is hereby incorporated by reference.

## IV.  CLAIM FOUR

25.  Paragraphs 1 through 24 are hereby incorporated by reference.

26. Petitioner was denied his federal constitutional right to due process under the Fifth, Sixth, and Fourteenth Amendments where the People violated Petitioner's right to testify in his own defense, his right to silence, and his right to be free from unreasonable searches by cross-examining regarding Petitioner's refusal to submit to a warrantless DNA test.

27. Because Petitioner's current incarceration is unlawful and unconstitutional, this Honorable Court should grant the within Writ and release Petitioner.

28. The portion of the attached Memorandum of Points and Authorities, including all facts and arguments therein, related to Claim Four is hereby incorporated by reference.

**V.   CLAIM FIVE**

29. Paragraphs 1 through 28 are hereby incorporated by reference.

30. Petitioner was denied his federal constitutional right to due process under the Fifth, Sixth, and Fourteenth Amendments where the trial court violated Petitioner's right to testify in his own defense by instructing the jury that Petitioner was an "interested witness."

31. Because Petitioner's current incarceration is unlawful and unconstitutional, this Honorable Court should grant the within Writ and release Petitioner.

32. The portion of the attached Memorandum of Points and Authorities, including all facts and arguments therein, related to Claim Five is hereby incorporated by reference.

## VI.   CLAIM SIX

33.   Paragraphs 1 through 32 are hereby incorporated by reference.

34.   Petitioner was denied his federal constitutional right to due process under the Fifth, Sixth, and Fourteenth Amendments where the trial court failed to instruct the jury on the definition of "robbery" when charging on felony murder.

35.   Because Petitioner's current incarceration is unlawful and unconstitutional, this Honorable Court should grant the within Writ and release Petitioner.

36.   The portion of the attached Memorandum of Points and Authorities, including all facts and arguments therein, related to Claim Six is hereby incorporated by reference.

## D.   PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Honorable Court:

1.   Take judicial notice of the transcripts, records, and files in *People v. Shaquill Battle*: Supreme Court, Monroe County, New York, number 2013-1092A; Supreme Court, Appellate Division, Fourth Department, New York, number KA 15-01127; and New York Court of Appeals, number 38 N.Y.3d 1132.

2.   Order Respondent and the People of New York to file and serve a certified copy of the record on appeal and show cause why Petitioner is not entitled to the relief sought;

3.   Grant a hearing to enable Petitioner to satisfy his remaining burden of proof, namely that the error had a substantial and injurious effect or influence in determining the jury's verdict;

4.     Find that the state court unreasonably determined the facts and unreasonably applied clearly established Federal law;

5.     Grant this Petition for Writ of Habeas Corpus; and

6.     Grant Petitioner any additional, appropriate relief as ordered by this Honorable Court.

Dated: October 17, 2023                    Respectfully submitted,


                                           KOCH LAW, PLLC

                              By:    /s/ Lee Koch
                                     Attorney for the Petitioner

## **VERIFICATION**

I, Lee Koch, hereby declare as follows:

I am an attorney admitted to practice law in the State of New York. I represent Petitioner herein, who is confined and restrained of his liberty at the Attica Correctional Facility, in Wyoming County. I have read the foregoing Petition for Writ of Habeas Corpus and am informed and believe the allegations therein are true. Petitioner is incarcerated in a different county than where I have my law office.

I declare under penalty of perjury under the laws of the State of New York that the foregoing is true and correct.

Executed on <u>October 17, 2023</u>, at New York, New York

<u>/s/ Lee Koch</u>
Lee Koch

LEE KOCH (State Bar No. 5387345)
KOCH LAW, PLLC
521 Fifth Avenue
Seventeenth Floor
New York, NY 10175
1-844-562-4529
1-646-480-661
lee@koch.law

Attorney for Petitioner

# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF NEW YORK

SHAQUILL BATTLE,

Petitioner,

vs.

JOSEPH H. NOETH, as Acting Warden,
Attica Correctional Facility,

Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.:

**Memorandum of Points and Authorities**

Petitioner, through counsel Aaron Spolin, hereby submits the following memorandum of points and authorities in support of his Petition, filed pursuant to 28 U.S.C. § 2254.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………..iv

1. Statement of the Case…………………………………………………………...1

2. Law and Argument…………………………………………………………...1

  A. Habeas Standards…………………………………………………………...1

  B. Timeliness……………………………………………………………….4

  C. Exhaustion……………………………………………………………5

  D. Substantive Claims………………………………………………………...8

    I. Claim One—Petitioner Was Denied His Federal Constitutional Right to Due Process Under the Fifth, Sixth, and Fourteenth Amendments Where the People Failed to Prove that Petitioner Was Guilty of Felony Murder…..8

    II. Claim Two—Petitioner Was Denied His Federal Constitutional Right to Due Process Under the Fifth, Sixth, and Fourteenth Amendments Where the Trial Court Failed to Suppress Petitioner's Statements to Police………...16

    III. Claim Three—Petitioner Was Denied His Federal Constitutional Right to Due Process Under the Fifth, Sixth, and Fourteenth Amendments Where the Trial Court Erroneously Denied Petitioner's Repeated Requests to Represent Himself.………………………………………………………….32

    IV. Claim Four—Petitioner Was Denied His Federal Constitutional Right to Due Process Under the Fifth, Sixth, and Fourteenth Amendments Where the People Violated Petitioner's Right to Testify in His Own Defense, His

Right to Silence, and His Right to Be Free from Unreasonable Searches by

Cross-Examining Regarding Petitioner's Refusal to Submit to a

Warrantless DNA Test……………………………………………………..36

V.     Claim Five—Petitioner Was Denied His Federal Constitutional Right to

Due Process Under the Fifth, Sixth, and Fourteenth Amendments Where

the Trial Court Violated Petitioner's Right to Testify in His Own Defense

by Instructing the Jury that Petitioner Was an "Interested Witness"……….40

VI.    Claim Six—Petitioner Was Denied His Federal Constitutional Right to Due

Process Under the Fifth, Sixth, and Fourteenth Amendments Where the

Trial Court Failed to Instruct the Jury on the Definition of "Robbery" When

Charging On Felony Murder…………………………………………………..42

CONCLUSION……………………………………………………………………44

CERTIFICATE OF SERVICE…………………………………………………..45

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aguilar v. Texas,*
   378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964)......................................................33

*Alabama v. White,*
   496 U.S. 325, 110 S.Ct. 2412 (1990)........................................................33, 34, 35

*Anderson v. Harless,*
   459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982)..............................................13

*Anderson v. Smith,*
   751 F.2d 96 (2d Cir. 1984)........................................................................25, 26

*Bell v. Cone,*
   535 U.S. 685 (2002).........................................................................................9

*Berkemer v. McCarty,*
   468 U.S. 420 (1984).......................................................................................24

*Boyette v. Lefevere,*
   246 F.3d 76 (2d Cir. 2001)............................................................................10

*Brinegar v. United States,*
   338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).................................16, 17

*Brown v. Artuz,*
   283 F.3d 492 (2d Cir. 2002)..........................................................................11

*Brown v. Wainwright,*
   665 F.2d 607 (5th Cir. 1982)........................................................................40

*Bruton v. United States,*
   391 U.S. 123 (1968)......................................................................................36

*Buckley v. Rogerson,*
   133 F.3d 1125 (8th Cir. 1998)........................................................................9

*Caldarola v. Calabrese,*
   298 F.3d 156 (2d Cir. 2002)..........................................................................36

*Carter v. United States*,
150 F.3d 202 (2d Cir. 1998)....................................................................14

*Caspari v. Bohlen*,
510 U.S. 383 (1994)...........................................................................12

*Chambers v. Mississippi*,
410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973)...................................41

*Channer v. Brooks*,
320 F.3d 188 (2d Cir. 2003)..................................................................10

*Charles W. v. Maul*,
214 F.3d 350 (2d Cir. 2000)....................................................................9

*Chavez v. Martinez*,
538 U.S. 760, 123 S.Ct. 1994, 155 L.Ed.2d 984 (2003)................................23

*Coffin v. United States*,
156 U.S. 432, 15 S.Ct. 394, 39 L.Ed. 481 (1895)............................16, 17, 47

*Coleman v. Thompson*,
501 U.S. 722, 111 S.Ct. 2546 (1991)......................................................14

*Colorado v. Connelly*,
479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986).......................23, 26, 27

*Colorado v. Spring*,
479 U.S. 564, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987)..............................27, 28

*Cotto v. Herbert*,
331 F.3d 217 (2d Cir. 2003)..............................................................12, 13

*Crane v. Kentucky*,
476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986)................................41

*Cupp v. Naughten*,
414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)...................................50

*Darden v. Wainwright*,
477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986)................................44

*Davis v. Kelly*,
  316 F.3d 125 (2d Cir. 2003)..................................................................11

*Davis v. Strack*,
  270 F.3d 111 (2d Cir. 2001)..................................................................50

*Davis v. United States*,
  160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499 (1895)................................16, 17

*Daye v. Attorney Gen. of the State of New York*,
  696 F.2d 186 (2d Cir. 1982)..................................................................13

*Deshawn v. Safir*,
  156 F.3d 340 (2d Cir. 1998)..................................................................28

*Dickerson v. United States*,
  530 U.S. 428, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000)....................23, 24, 27

*Donnelly v. DeChristoforo*,
  416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)..............................44

*Drake v. Portuondo*,
  321 F.3d 338 (2d Cir. 2003)..................................................................10

*Draper v. United States*,
  358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959)..............................33, 34

*Duncan v. Louisiana*,
  391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968)..............................16

*Estelle v. McGuire*,
  502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991)............................41, 50

*Estelle v. Williams*,
  425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976)..............................47

*Faretta v. California*,
  422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)............................39, 40

*Florida v. J.L.*,
  529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000)........................35, 36

*Garofolo v. Coomb*,
   804 F.2d 201 (2d Cir. 1986)..............................................................................44

*Green v. Scully*,
   850 F.2d 894 (2d Cir. 1988)...............................................................27, 28, 38

*Greene v. Fisher*,
   565 U.S. 34 (2011).......................................................................................9

*Harrington v. Richter*,
   562 U.S. 86 (2011).......................................................................................8

*Hicks v. United States*,
   150 U.S. 442, 14 S.Ct. 144, 37 L.Ed. 1137 (1893).......................................48

*Holland v. United States*,
   348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954).........................................16

*Holt v. United States*,
   218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910)...........................................16

*Illinois v. Gates*,
   462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)............................33, 34

*In re Winship*,
   397 U.S. 358 (1970)................................................................................16, 18

*Jackson v. Edwards*,
   404 F.3d 612 (2d Cir. 2005)..........................................................................50

*Johnstone v. Kelly*,
   808 F.2d 214 (2d Cir. 1986)....................................................................39, 40

*Jones v. Keane*,
   329 F.3d 290 (2d Cir. 2003)..........................................................................13

*LanFranco v. Murray*,
   313 F.3d 112 (2d Cir. 2002)..........................................................................11

*Lego v. Twomey*,
   404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972).....................................23

*Leland v. Oregon*,
   343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952).........................................16

*Lynch v. Dolce*,
   789 F.3d 303 (2d Cir. 2015)...................................................................50

*Lynumn v. Illinois*,
   372 U.S. 528, 83 S.Ct. 917, 9 L.Ed.2d 922 (1963).........................................28

*Martinez v. Simonetti*,
   202 F.3d 625 (2d Cir. 2000)...................................................................32

*Maryland v. Macon*,
   472 U.S. 463, 105 S.Ct. 2778, 86 L.Ed.2d 370 (1985)....................................29

*Mercedes v. Herbert*,
   2002 WL 826809 (S.D.N.Y. Apr. 30, 2002)................................................12

*Miles v. United States*,
   103 U.S. 304, 26 L.Ed. 481 (1881)...........................................................16

*Miller–El v. Cockrell*,
   123 S.Ct. 1029 (2003)..........................................................................10

*Missouri v. Seibert*,
   542 U.S. 600 (2004)......................................................................23, 24

*Moran v. Burbine*,
   475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986)...................................26

*Murray v. Carrier*,
   477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)...................................15

*Oregon v. Elstad*,
   470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985)...............................26, 37

*People v. Acosta*,
   80 N.Y.2d 665, 593 N.Y.S.2d 978, 609 N.E.2d 518 (1993)..........................18, 19

*People v. Huntley*,
   15 N.Y.2d 72 (N.Y. 1965).....................................................................42

*People v. Joyner,*
26 N.Y.2d 106 (1970)..................................................................................21

*People v. LaBelle,*
18 N.Y.2d 405 (1966)..................................................................................21

*People v. Rosario,*
78 N.Y.2d 583, 578 N.Y.S.2d 454, 585 N.E.2d 766 (N.Y. 1991).................................32

*People v. Steinberg,*
79 N.Y.2d 673, 584 N.Y.S.2d 770, 595 N.E.2d 845 (1992)...........................................18

*People v. Yarrell,*
75 N.Y.2d 828 (1990)..................................................................................21

*Petrucelli v. Coombe,*
735 F.2d 684 (2d Cir. 1984)..........................................................................13

*Picard v. Connor,*
404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971)........................................13

*Pierson v. Ray,*
386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967)......................................29

*Ponnapula v. Spitzer,*
297 F.3d 172 (2d Cir. 2002)..........................................................................11

*Reagan v. United States,*
157 U.S. 301, 15 S.Ct. 610, 39 L.Ed. 709 (1895)............................................48

*Reyes v. Keane,*
118 F.3d 136 (2d Cir. 1997)..........................................................................14

*Rock v. Arkansas,*
483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987)..................................40, 41

*Rogers v. Powell,*
120 F.3d 446 (3d Cir. 1997)..........................................................................31

*Singer v. Fulton Cnty. Sheriff,*
63 F.3d 110 (2d Cir. 1995)............................................................................29

*Sloley v. VanBramer*,
945 F.3d 30 (2d Cir. 2019)....................................................................9

*Spano v. New York*,
360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959)....................................28

*Speiser v. Randall*,
357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958)...............................16, 17

*Spinelli v. United States*,
393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969)................................33, 34

*State v. Cooley*,
457 A.2d 352 (Del. 1983)....................................................................32

*Tankleff v. Senkowski*,
135 F.3d 235 (2d Cir. 1998)..........................................................27, 37, 38

*Taylor v. Illinois*,
484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988)...............................40, 41

*Tribble v. Gardner*,
860 F.2d 321 (9th Cir. 1988)................................................................10

*Turner v. Artuz*,
262 F.3d 118 (2d Cir. 2001).................................................................14

*United States ex rel. Maldonado v. Denno*,
348 F.2d 12 (2d Cir. 1965)..................................................................39

*United States v. Agurs*,
427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)........................................41

*United States v. Alfonso-Perez*,
535 F.2d 1362 (2d Cir. 1976)................................................................44

*United States v. Anderson*,
929 F.2d 96 (2d Cir. 1991)..................................................................38

*United States v. Arlt*,
41 F.3d 516 (9th Cir. 1994).................................................................40

*United States v. Ayala*,
307 F.2d 574 (2d Cir. 1962)................................................................45

*United States v. Brutus*,
505 F.3d 80 (2d Cir. 2007)................................................................48

*United States v. Canfield*,
212 F.3d 713 (2d Cir. 2000)................................................................36

*United States v. Canieso*,
470 F.2d 1224................................................................30

*United States v. Colon*,
250 F.3d 130 (2d Cir. 2001)................................................................32

*United States v. Cutchin*,
956 F.2d 1216 (D.C. Cir. 1992)................................................................31

*United States v. Dove*,
916 F.2d 41 (2d Cir. 1990)................................................................47

*United States v. Drummond*,
481 F.2d 62 (2d Cir. 1973)................................................................44

*United States v. Gaines*,
295 F.3d 293 (2d Cir. 2002)................................................................26, 28

*United States v. Gaines*,
457 F.3d 238 (2d Cir. 2006)................................................................47, 48

*United States v. Garcia*,
56 F.3d 418 (2d Cir. 1995)................................................................45

*United States v. Glenn*,
312 F.3d 58 (2d Cir. 2002)................................................................45

*United States v. Hensley*,
469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985)................................................................29, 30, 31

*United States v. Jaswal*,
47 F.3d 539 (2d Cir. 1995)................................................................28

*United States v. Johnson*,
   513 F.2d 819 (2d Cir. 1975)..................................................................45

*United States v. Male Juvenile*,
   121 F.3d 34 (2d Cir. 1997)........................................................26, 27, 28

*United States v. Marks*,
   368 F.2d 566 (2d Cir. 1966)..................................................................36

*United States v. Mickens*,
   926 F.2d 1323 (2d Cir. 1991)................................................................45

*United States v. Mitchell*,
   966 F.2d 92 (2d Cir. 1992)....................................................................28

*United States v. Orlandez–Gamboa*,
   320 F.3d 328 (2d Cir. 2003)..................................................................23

*United States v. Oshatz*,
   912 F.2d 534 (2d Cir. 1990)..................................................................48

*United States v. Patane*,
   542 U.S. 630, 124 S.Ct. 2620, 159 L.Ed.2d 667 (2004)......................24

*United States v. Perez*,
   387 F.3d 201 (2d Cir. 2004)..................................................................44

*United States v. Ramirez*,
   79 F.3d 298 (2d Cir. 1996)....................................................................26

*United States v. Rollins*,
   522 F.2d 160 (2d Cir. 1975)..................................................................36

*United States v. Ruggles*,
   70 F.3d 262 (2d Cir. 1995)....................................................................28

*United States v. Shareef*,
   100 F.3d 1491 (10th Cir. 1996)............................................................32

*United States v. Szymaniak*,
   934 F.2d 434 (2d Cir. 1991)..................................................................26

*United States v. Valez*,
  796 F.2d 24 (2d Cir. 1986)..................................................................30

*Weyant v. Okst*,
  101 F.3d 845 (2d Cir. 1996)................................................................29

*Whiteley v. Warden, Wyoming State Penitentiary*,
  401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971)........................30

*Williams v. Bartlett*,
  44 F.3d 95 (2d Cir. 1994)...............................................................39, 40

*Williams v. Taylor*,
  529 U.S. 362 (2000)...........................................................................9

*Williams v. United States*,
  308 F.2d 326 (D.C. Cir. 1962)..........................................................30

*Wilson v. United States*,
  232 U.S. 563, 34 S.Ct. 347, 58 L.Ed. 728 (1914).............................16

*Yarborough v. Alvarado*,
  541 U.S. 652 (2004)............................................................................9

*Yung v. Walker*,
  296 F.3d 129 (2d Cir. 2002)...............................................................11

**Statutes**

28 U.S.C. § 2244(b)(3)(A)....................................................................14

28 U.S.C. § 2244(d)(1)-(2)...................................................................12

28 U.S.C. § 2244(d)(1)(A)....................................................................12

28 U.S.C. § 2254.............................................................................8, 10

28 U.S.C. § 2254(b)(1).........................................................................12

28 U.S.C. § 2254(b)(1)(B)(i)................................................................14

28 U.S.C. § 2254(b)(2).........................................................................13

28 U.S.C. § 2254(d) ......................................................................................................8,11

28 U.S.C. § 2254(d)(1).................................................................................................9, 11

28 U.S.C. § 2254(d)(2).....................................................................................................10

28 U.S.C. § 2254(e)(1).....................................................................................................10

U.S. Const., 14th..............................................................................................................15

## Other Authorities

C. McCormick, Evidence § 321, pp. 681-682 (1954).......................................................16

P.L. § 125.25(A)(3)...........................................................................................................19

P.L. § 160.00.....................................................................................................................19

## 1.	STATEMENT OF THE CASE

Petitioner hereby incorporates paragraphs 1-36 of his Verified Petition for Writ of Habeas Corpus by a Person in State Custody, above, which includes the statement of facts.

## 2.	LAW AND ARGUMENT

## A.	HABEAS STANDARDS

The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *Harrington v. Richter*, 562 U.S. 86, 97 (2011). The text of § 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under 28 U.S.C. § 2254(d)(1), a state court's decision is "contrary to . . . clearly established Federal law," as determined by the United States Supreme Court, "if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts." *Bell v. Cone,* 535 U.S. 685, 694 (2002). A state court's decision "involve[s] an unreasonable

application of[ ] clearly established Federal law" as determined by the U.S. Supreme Court, within the meaning of § 2254(d)(1), "if the state court identifies the correct governing legal rule . . . but unreasonably applies it to the facts" or "if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor,* 529 U.S. 362, 407 (2000). The Supreme Court has underscored that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410 (emphasis in original). Accordingly, this Honorable Court may not grant habeas relief if "fairminded jurists could disagree over whether" the state court's decision was correct. *Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004).

The governing law is the law that existed at the time the state court rendered its decision. *Greene v. Fisher*, 565 U.S. 34, 40 (2011). With regard to Second Circuit Court of Appeals opinions, such may be persuasive authority for purposes of determining whether a particular state court decision is an "unreasonable application" of Supreme Court law, and also may help to determine what law is "clearly established." *Sloley v. VanBramer*, 945 F.3d 30, 42 (2d Cir. 2019), *citing Charles W. v. Maul*, 214 F.3d 350, 357 (2d Cir. 2000), *Buckley v. Rogerson*, 133 F.3d 1125, 1129 (8th Cir. 1998) ("In the absence of binding precedent, a court should look to all available decisional law, including decisions of other state courts, other circuits and district courts"); *Tribble v. Gardner*, 860 F.2d 321, 324 (9th Cir. 1988).

Pursuant to the AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the

presumption of correctness by clear and convincing evidence." *Boyette v. Lefevere,* 246

F.3d 76, 88 (2d Cir. 2001) (quoting 28 U.S.C. § 2254(e)(1)). As the Second Circuit has

stated, a federal habeas court should

> review the state court's findings only to determine whether they were
> unreasonable in light of the evidence presented, 28 U.S.C. § 2254(d)(2), or
> whether the presumption that they are correct was rebutted by "clear and
> convincing" evidence, 28 U.S.C. § 2254(e)(1).... In accordance with 28
> U.S.C. § 2254, as modified by AEDPA, our review of the state court
> determinations of facts is limited to an inquiry into whether the conclusion
> of the state trial court was unreasonable based on the evidence presented and
> whether petitioner has presented evidence in the District Court that clearly
> and convincingly rebuts the presumption that the state court's factual findings
> are correct.

*Channer v. Brooks,* 320 F.3d 188, 195–96 (2d Cir. 2003); *accord, e.g., Miller–El v.*

*Cockrell,* 123 S.Ct. 1029, 1041 (2003) ("Factual determinations by state courts are

presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and

a decision adjudicated on the merits in a state court and based on a factual determination

will not be overturned on factual grounds unless objectively unreasonable in light of the

evidence presented in the state-court proceeding, § 2254(d)(2)."); *Drake v. Portuondo,* 321

F.3d 338, 345 (2d Cir. 2003) ("Under AEDPA, a state court's factual findings enjoy a

presumption of correctness and may not be disturbed except upon a showing of 'clear and

convincing evidence.'"); *Davis v. Kelly,* 316 F.3d 125, 127 (2d Cir. 2003) ("Under the

AEDPA, we must accept [the state court's] finding of fact unless it is controverted by 'clear

and convincing evidence.'"); *LanFranco v. Murray,* 313 F.3d 112, 117 (2d Cir. 2002) ("In

reviewing habeas petitions, we must presume the state court's findings of fact are correct,

unless the petitioner meets 'the burden of rebutting th[is] presumption of correctness by

clear and convincing evidence.") (brackets in original); *Ponnapula v. Spitzer,* 297 F.3d 172, 179 (2d Cir. 2002) ("We presume that the state court's factual findings are correct unless they are rebutted by clear and convincing evidence."); *Yung v. Walker,* 296 F.3d 129, 134 (2d Cir. 2002) ("We must presume the state court's factual findings to be correct and may overturn those findings only if petitioner offers clear and convincing evidence of their incorrectness."); *Brown v. Artuz,* 283 F.3d 492, 498 (2d Cir. 2002) ("[T]he AEDPA instructs that state court findings of fact 'shall be presumed correct,' rebuttable only upon a showing of 'clear and convincing evidence'".)

## B.      TIMELINESS

Pursuant to 28 U.S.C. § 2254(d), a "1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2254(d)(1). The limitation period shall run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1)-(2).

Petitioner respectfully submits that his instant petition is timely. Petitioner was sentenced on June 23, 2015, and the New York Supreme Court, Appellate Division, Fourth Department, New York affirmed Petitioner's judgment on December 23, 2021. The New York Court of Appeals denied Petitioner's application for leave to appeal on July 21, 2022.

Petitioner did not file a petition for writ of certiorari with the United States Supreme Court; thus, his judgment of sentence became final on October 19, 2022. *Caspari v. Bohlen*, 510 U.S. 383 (1994). Petitioner files his instant petition before October 19, 2023, within the one-year deadline allotted pursuant to 28 U.S.C. § 2244(d)(1)(A).

## C.    EXHAUSTION

Generally, a petitioner must have exhausted the remedies available to him in state court before seeking habeas corpus relief, unless there is no state corrective process, or it otherwise appears that such process would be ineffective to protect the petitioner's rights. *See* 28 U.S.C. § 2254(b)(1). The Second Circuit employs a two-prong test to determine whether a habeas claim is exhausted. *See Cotto v. Herbert,* 331 F.3d 217, 237 (2d Cir. 2003); *Mercedes v. Herbert,* No. 01 Civ. 1359, 2002 WL 826809, at *4 (S.D.N.Y. Apr. 30, 2002). First, a petitioner must present "the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it." *Cotto,* 331 F.3d at 237 (citation omitted). Thus, "a state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for habeas corpus." *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).

Second, a habeas petitioner must have "'fairly presented' to the state courts the 'substance' of his federal habeas corpus claim." *Anderson v. Harless,* 459 U.S. 4, 6, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982) (citation omitted). It is not sufficient that a petitioner merely alleges the facts necessary for the federal claim or a similar state law claim. *See id.* In other words, "[t]he claim presented to the state court ... must be the 'substantial equivalent' of the claim raised in the federal habeas petition." *Jones v. Keane,* 329 F.3d 290, 295 (2d Cir. 2003) (citations omitted). A state defendant may "fairly present" his constitutional claim to a state court in a number of ways, including: (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation. *Daye v. Attorney Gen. of the State of New York,* 696 F.2d 186, 194 (2d Cir. 1982) (*en banc*); *see also Petrucelli v. Coombe,* 735 F.2d 684, 688 (2d Cir. 1984).

Notwithstanding this elaborate test, under certain limited circumstances a federal court retains discretion to entertain the merits of a petitioner's federal claim even if it is not exhausted in state court. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

When a claim has never been presented to a state court, a federal court may theoretically find that there is an "absence of available State corrective process" under § 2254(b)(1)(B)(i) if it is clear that the unexhausted claim is procedurally barred by state law

and, as such, its presentation in the state forum would be futile. In such a case the habeas court theoretically has the power to deem the claim exhausted. *Reyes v. Keane,* 118 F.3d 136, 139 (2d Cir. 1997).

The Second Circuit observed that dismissal of a habeas claim on the ground that it was procedurally defaulted "differs crucially" from a dismissal for failure to exhaust state remedies. *Turner v. Artuz,* 262 F.3d 118, 122 (2d Cir. 2001). Dismissal for a procedural default is regarded as a disposition of the habeas claim on the merits. This means that any future presentation of the claim would be a second or successive habeas petition, requiring authorization by this Court pursuant to 28 U.S.C. § 2244(b)(3)(A). *Id.* (citing *Carter v. United States,* 150 F.3d 202, 205-06 (2d Cir. 1998)). For a procedurally defaulted claim to escape this fate, the petitioner must show cause for the default and prejudice or demonstrate that failure to consider the claim will result in a miscarriage of justice (i.e., the petitioner is actually innocent). *Coleman v. Thompson,* 501 U.S. 722, 748-50, 111 S.Ct. 2546 (1991).

This procedural default doctrine and its attendant "cause and prejudice" standard are grounded in concerns for federalism and comity between the state and federal sovereigns. *Id.* at 730, 111 S.Ct. 2546. It ensures that federal courts respect the "States' interest in correcting their own mistakes." *Id.* at 732, 111 S.Ct. 2546. The doctrine applies whether the default occurred at trial, on appeal or on state collateral review. *Murray v. Carrier,* 477 U.S. 478, 490-92, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

Petitioner raised claims one through four in his direct appeal to the New York Supreme Court, Appellate Division, First Department, and claims one through five in the

New York Court of Appeals, which addressed the claims on the merits. Thus, Petitioner properly exhausted claims one through five and they are subject to the AEDPA.

**D.     SUBSTANTIVE CLAIMS**

**I.     Claim One—Petitioner Was Denied His Federal Constitutional Right to Due Process under the Fifth, Sixth, and Fourteenth Amendments Where the People Failed to Prove that Petitioner was Guilty of Felony Murder.**

Petitioner respectfully submits that the State court's adjudication of this claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court, and based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The State court failed to identify the correct, governing legal rule and unreasonably applied its chosen rule to the facts.  Further, for the reasons set forth below, Petitioner has forwarded clear and convincing evidence that the State court's decision is not entitled to the presumption of correctness.

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law…." (U.S. Const., 14th Amend.) This clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship* (1970) 397 U.S. 358, 364.

The United States Supreme Court explained the relationship between the Due

Process Clause of the United States Constitution and the requirement that the prosecution

prove its case beyond a reasonable doubt:

> The requirement that guilt of a criminal charge be established by proof beyond a reasonable doubt dates at least from our early years as a Nation. The 'demand for a higher degree of persuasion in criminal cases was recurrently expressed from ancient times, (though) its crystallization into the formula 'beyond a reasonable doubt' seems to have occurred as late as 1798. It is now accepted in common law jurisdictions as the measure of persuasion by which the prosecution must convince the trier of all the essential elements of guilt.' C. McCormick, Evidence § 321, pp. 681-682 (1954); see also 9 J. Wigmore, Evidence, § 2497 (3d ed. 1940). Although virtually unanimous adherence to the reasonable-doubt standard in common-law jurisdictions may not conclusively establish it as a requirement of due process, such adherence does 'reflect a profound judgment about the way in which law should be enforced and justice administered.' *Duncan v. Louisiana*, 391 U.S. 145, 155, 88 S.Ct. 1444, 1451, 20 L.Ed.2d 491 (1968).
>
> Expressions in many opinions of this Court indicate that it has long been assumed that proof of a criminal charge beyond a reasonable doubt is constitutionally required. See, for example, *Miles v. United States*, 103 U.S. 304, 312, 26 L.Ed. 481 (1881); *Davis v. United States*, 160 U.S. 469, 488, 16 S.Ct. 353, 358, 40 L.Ed. 499 (1895); *Holt v. United States*, 218 U.S. 245, 253, 31 S.Ct. 2, 6, 54 L.Ed. 1021 (1910); *Wilson v. United States*, 232 U.S. 563, 569-570, 34 S.Ct. 347, 349, 350, 58 L.Ed. 728 (1914); *Brinegar v. United States*, 338 U.S. 160, 174, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949); *Leland v. Oregon*, 343 U.S. 790, 795, 72 S.Ct. 1002, 1005, 1006, 96 L.Ed. 1302 (1952); *Holland v. United States*, 348 U.S. 121, 138, 75 S.Ct. 127, 136, 137, 99 L.Ed. 150 (1954); *Speiser v. Randall*, 357 U.S. 513, 525-526, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460 (1958). Cf. *Coffin v. United States*, 156 U.S. 432, 15 S.Ct. 394, 39 L.Ed. 481 (1895). Mr. Justice Frankfurter stated that '(i)t [is] the duty of the Government to establish [. . .] guilt beyond a reasonable doubt. This notion—basic in our law and rightly one of the boasts of a free society—is a requirement and a safeguard of due process of law in the historic, procedural content of 'due process." *Leland v. Oregon, supra*, 343 U.S., at 802—803, 72 S.Ct., at 1009 (dissenting opinion). In a similar vein, the Court said in *Brinegar v. United States, supra*, 338 U.S., at 174, 69 S.Ct., at 1310, that '(g)uilt in a criminal case must be proved beyond a reasonable doubt and by evidence confined to that which long experience in the common-law tradition, to some extent embodied in the Constitution, has

crystallized into rules of evidence consistent with that standard. These rules are historically grounded rights of our system, developed to safeguard men from dubious and unjust convictions, with resulting forfeitures of life, liberty and property.' *Davis v. United States, supra*, 160 U.S., at 488, 16 S.Ct., at 358 stated that the requirement is implicit in 'constitutions [. . .] (which) recognize the fundamental principles that are deemed essential for the protection of life and liberty.' In *Davis* a murder conviction was reversed because the trial judge instructed the jury that it was their duty to convict when the evidence was equally balanced regarding the sanity of the accused. This Court said: 'On the contrary, he is entitled to an acquittal of the specific crime charged, if upon all the evidence, there is reasonable doubt whether he was capable in law of committing crime [. . . .] No man should be deprived of his life under the forms of law unless the jurors who try him are able, upon their consciences, to say that the evidence before them [. . .] is sufficient to show beyond a reasonable doubt the existence of every fact necessary to constitute the crime charged.' *Id*., at 484, 493, 16 S.Ct., at 357, 360.

The reasonable-doubt standard plays a vital role in the American scheme of criminal procedure. It is a prime instrument for reducing the risk of convictions resting on factual error. The standard provides concrete substance for the presumption of innocence—that bedrock 'axiomatic and elementary' principle whose 'enforcement lies at the foundation of the administration of our criminal law.' *Coffin v. United States, supra*, 156 U.S., at 453, 15 S.Ct., at 403. As the dissenters in the New York Court of Appeals observed, and we agree, 'a person accused of a crime [. . .] would be at a severe disadvantage, a disadvantage amounting to a lack of fundamental fairness, if he could be adjudged guilty and imprisoned for years on the strength of the same evidence as would suffice in a civil case.' 24 N.Y.2d, at 205, 299 N.Y.S.2d, at 422, 247 N.E.2d, at 259.

The requirement of proof beyond a reasonable doubt has this vital role in our criminal procedure for cogent reasons. The accused during a criminal prosecution has at stake interest of immense importance, both because of the possibility that he may lose his liberty upon conviction and because of the certainty that he would be stigmatized by the conviction. Accordingly, a society that values the good name and freedom of every individual should not condemn a man for commission of a crime when there is reasonable doubt about his guilt. As we said in *Speiser v. Randall, supra*, 357 U.S., at 525-526, 78 S.Ct., at 1342:

> There is always in litigation a margin of error, representing error in factfinding, which both parties must take into account. Where one party has at stake an interest of transcending value—as a criminal defends his

> liberty—this margin of error is reduced as to him by the process of placing on the other party the burden of [. . .] persuading the factfinder at the conclusion of the trial of his guilt beyond a reasonable doubt. Due process commands that no man shall lose his liberty unless the Government has borne the burden of [. . .] convincing the factfinder of his guilt.
>
> To this end, the reasonable-doubt standard is indispensable, for it 'impresses on the trier of fact the necessity of reaching a subjective state of certitude of the facts in issue.' Dorsen & Rezneck, In Re Gault and the Future of Juvenile Law, 1 Family Law Quarterly, No. 4, pp. 1, 26 (1967).
>
> Moreover, use of the reasonable-doubt standard is indispensable to command the respect and confidence of the community in applications of the criminal law. It is critical that the moral force of the criminal law not be diluted by a standard of proof that leaves people in doubt whether innocent men are being condemned. It is also important in our free society that every individual going about his ordinary affairs have confidence that his government cannot adjudge him guilty of a criminal offense without convincing a proper factfinder of his guilt with utmost certainty.
>
> Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.

*In re Winship,* 397 U.S. 358, 361-64 (1970).

A verdict is legally sufficient when, viewing the facts in a light most favorable to the People, "there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt" *People v. Acosta,* 80 N.Y.2d 665, 672, 593 N.Y.S.2d 978, 609 N.E.2d 518 (1993), quoting *People v. Steinberg,* 79 N.Y.2d 673, 681–682, 584 N.Y.S.2d 770, 595 N.E.2d 845 (1992). A sufficiency inquiry requires a court to marshal competent facts most favorable

to the People and determine whether, as a matter of law, a jury could logically conclude that the People sustained its burden of proof. *Id.*

A person is guilty of murder in the second degree when:

Acting either alone or with one or more other persons, he commits or attempts to commit robbery . . . and, in the course of and in furtherance of such crime or of immediate flight therefrom, he, or another participant, if there be any, causes the death of a person other than one of the participants; except that in any prosecution under this subdivision, in which the defendant was not the only participant in the underlying crime, it is an affirmative defense that the defendant:

(a) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and

(b) Was not armed with a deadly weapon, or any instrument, article or substance readily capable of causing death or serious physical injury and of a sort not ordinarily carried in public places by law-abiding persons; and

(c) Had no reasonable ground to believe that any other participant was armed with such a weapon, instrument, article or substance; and

(d) Had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury.

(P.L. § 125.25(A)(3).)

Robbery is forcible stealing. (P.L. § 160.00). A person forcibly steals property and commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) Compelling the owner of such property or another person to deliver

up the property or to engage in other conduct which aids in the commission of the larceny. (*Id*.)

The only theory under which the jury convicted Petitioner was felony murder. This required the People to establish an underlying robbery. The People failed to present sufficient evidence to permit the jury to consider the question of whether Petitioner or his codefendants committed or attempted to commit a robbery. The uncontroverted evidence at trial established that the assailants did not retrieve any of the decedent's valuables or cash, though they had the opportunity to do so and nothing stood in their way if they indeed intended to steal. (T 540, 602, 725, 733, 761, 979-980, 1096, 1168). However, the evidence demonstrated that the perpetrators possessed no such intent.

The People conceded that the assailants did not steal anything while in the decedent's residence save for his cellular telephone. However, law enforcement discovered the decedent's cellular telephone on his person at the scene immediately following the incident and the People never established that the decedent owned more than one cellular telephone. Although Petitioner's girlfriend testified that one of the cellular telephones in Petitioner's possession displayed the name "Jamel," all this established was that Petitioner possessed contact information for Jamel and was insufficient to allow the jury to consider the question of whether that was the decedent's phone. (T 1346). Even assuming *arguendo* that the phone were the decedent's, the evidence at most permitted the jury to consider whether Petitioner committed the crime of receiving stolen property since the People were able to offer no evidence that Petitioner had the intent or opportunity to retrieve the phone

from the decedent, or that the phone was not merely taken in furtherance of the assailant's escape, and not a motive or intent that predated the actual crime.

Further assuming that the People could establish that a robbery occurred, the People failed to establish that it was "in the course of" or in "furtherance of" the homicide. As set forth above, at most, the evidence permitted the inference that if the phone were in fact the decedent's, that the assailants only formed the intent to take the phone after the killing as a means of concealing their identities and facilitating their escape. Fatal to the People's position is that the assailants were not attempting to make off with any of the supposed robbery proceeds by taking the decedent's phone. Thus, this action could not have formed the basis for the murder charge. *Accord People v. Joyner*, 26 N.Y.2d 106 (1970); *People v. Yarrell*, 75 N.Y.2d 828 (1990); *People v. LaBelle*, 18 N.Y.2d 405 (1966). It cannot seriously be argued that if the assailants intended to steal from the target, that they would not take easily accessible and concealable objects of substantial value and would instead steal something that possessed little value.

The People further failed to establish any inculpatory intent or acts vis-à-vis Petitioner. Petitioner was not a participant in any supposed robbery. Petitioner was merely present when the crime occurred, and his mere presence is insufficient to establish guilt. It cannot be argued that Petitioner's accompanying Carter or Tucker was for any sinister purpose since the three were childhood friends and often socialized together. The only evidence as to intent was text messages between Carter and Tucker in which Petitioner was not included and to which Petitioner was not privy. The object of Tucker's and Carter's conspiracy as evidenced through the text messages was homicide, not robbery. The

prosecution admitted that there was no evidence that Petitioner engaged in the planning of the homicide, and this is reinforced by the fact that the jury acquitted Petitioner of intentional murder. There was no discussion between Carter and Tucker in the messages relating in any way to a theft.

The People failed to establish that Petitioner had any knowledge—constructive, tacit, or otherwise—of Carter's and Tucker's plan when they arrived at the decedent's residence. The forensic evidence established that Petitioner never entered the decedent's residence. Even if Petitioner had been aware of Carter's and Tucker's putative, preexisting, homicidal intent, Petitioner would not have been aware of their intent to commit a theft as this was not included in Carter's and Tucker's communications. The fact that Petitioner's watch was found outside of the crime scene confirms his account that he remained outside of the decedent's house until he was startled by gunshots, at which point he fled.

Petitioner's conviction was also against the weight of the evidence for the reasons set forth above. Petitioner established that he was not a principle or accomplice in the homicide where the jury acquitted him of this conduct. The People presented no evidence that Petitioner assisted the assailants in any way prior to the shooting or that he was even in the house when the shooting occurred. The evidence established that Petitioner was not armed with a deadly weapon and that he did not know that Carter or Tucker were armed or intended to commit the acts that ultimately occurred.

Accordingly, this Honorable Court should grant the within writ and release Petitioner.

**II. Claim Two—Petitioner Was Denied His Federal Constitutional Right to Due Process under the Fifth, Sixth, and Fourteenth Amendments Where the Trial Court Failed to Suppress Petitioner's Statements to Police.**

Petitioner respectfully submits that the State court's adjudication of this claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court, and based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The State court failed to identify the correct, governing legal rule and unreasonably applied its chosen rule to the facts. Further, for the reasons set forth below, Petitioner has forwarded clear and convincing evidence that the State court's decision is not entitled to the presumption of correctness.

Only voluntary confessions are admissible under either the self-incrimination or due process clause of the Fifth Amendment. *Dickerson v. United States,* 530 U.S. 428, 433, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000). Thus, a *Miranda* waiver and a statement that follows must both be voluntary for the statement to be admissible. *See Chavez v. Martinez,* 538 U.S. 760, 773, 123 S.Ct. 1994, 155 L.Ed.2d 984 (2003); *see also Colorado v. Connelly,* 479 U.S. 157, 169–70, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986); *United States v. Orlandez–Gamboa,* 320 F.3d 328, 332 (2d Cir. 2003). The government must prove voluntariness by a preponderance of the evidence. *See Missouri v. Seibert,* 542 U.S. 600, at 610, n. 1, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004) (citing *Connelly,* 479 U.S. at 169, 107 S.Ct. 515); *Lego v. Twomey,* 404 U.S. 477, 482–89, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972).

*Miranda* is considered a prophylactic rule because the substance of the warnings have no actual source in the language of the Fifth Amendment. Instead, *Miranda's* requirements are a judicial creation designed to protect the self-incrimination clause. Since *Dickerson,* however, it is clear that compliance with *Miranda* is a constitutional imperative. *See Dickerson,* 530 U.S. at 438, 444, 120 S.Ct. 2326. *Miranda* recognizes that coercive pressures are inherent in custodial interrogation, and that the right against self-incrimination can be protected only if interrogation is preceded by the requisite warnings and a voluntary waiver. *Id.* at 435, 120 S.Ct. 2326.

However, *Miranda* protects against the possibility of coercion, not coercion itself. Therefore, a statement following an involuntary *Miranda* waiver must be suppressed even though the statement itself might be voluntary. *Id.* at 444, 86 S.Ct. 1602 ("The disadvantage of the *Miranda* rule is that statements which may be by no means involuntary, made by a defendant who is aware of 'his rights,' may nonetheless be excluded ....") This is so because the failure to comply with *Miranda* creates a presumption of compulsion. *See United States v. Patane,* 542 U.S. 630, 639, 124 S.Ct. 2620, 159 L.Ed.2d 667 (2004). By the same token, once *Miranda's* requirements have been met, a defendant is hard pressed to argue that his confession has been coerced. *See Dickerson,* 530 U.S. at 444, 120 S.Ct. 2326 (citing *Berkemer v. McCarty,* 468 U.S. 420, 433, n. 20, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984)). Ultimately, however, a custodial statement is inadmissible at trial unless the prescribed *Miranda* warnings have been administered, and a valid waiver obtained. *Missouri v. Seibert,* 542 U.S. at 608, 124 S.Ct. 2601.

Typically, there are three issues in a *Miranda* analysis: whether *Miranda* warnings are necessary; if so, were they adequate; and if so, did the suspect effectively waive his rights. *See Anderson v. Smith,* 751 F.2d 96, 101 (2d Cir. 1984). As to waiver, *Miranda* states:

> The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently ... Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him. The mere fact that he may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering further inquiries until he ... thereafter consents to be questioned ...

> In sum, the privilege is fulfilled only when the person is guaranteed the right 'to remain silent unless he chooses to speak in the unfettered exercise of his own will' ...

> [A] valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained ... Moreover, any evidence that the accused was threatened, tricked, or cajoled into a waiver will ... show that the defendant did not voluntarily waive his privilege.

*Miranda v. Arizona,* 384 U.S. 436, 444–45, 460, 475–76, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (internal citation omitted). There are three components to the waiver analysis; namely, a defendant's decision to relinquish his rights must be voluntary, knowing, and intelligent. Thus, relinquishment

> must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. Second, the waiver must have been made with full awareness of both the nature of the right abandoned and the consequences of the decision to abandon it. Only if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that Miranda rights have been waived.

*Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986) (citations omitted); *see also United States v. Male Juvenile,* 121 F.3d 34, 38 (2d Cir. 1997).

Various legal principles guide the evaluation of whether a *Miranda* waiver is voluntary given the totality of the circumstances. A waiver may be written, oral, explicit, or implicit, and there is no *per se* rule that governs the inquiry. *United States v. Gaines,* 295 F.3d 293, 297 (2d Cir. 2002). If a suspect's response to questions concerning waiver is unclear, the police may ask limited questions to ascertain whether the suspect does understand and waive. *See United States v. Ramirez,* 79 F.3d 298, 304–05 (2d Cir. 1996); *United States v. Szymaniak,* 934 F.2d 434, 439 (2d Cir. 1991); *Anderson v. Smith,* 751 F.2d at 103 (citations omitted). If a suspect speaks after being advised of his rights, his speech is probative of his intention to waive. *Oregon v. Elstad,* 470 U.S. 298, 318, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985). The subjective intentions of the police are irrelevant to whether the defendant effectively waives his rights because what is on the minds of the police can have no objective impact on a suspect. *Moran v. Burbine,* 475 U.S. at 423, 106 S.Ct. 1135. However, if the police engage in objective behavior constituting impermissible trickery, deceit, or coercion, that behavior may undermine a suspect's essential knowledge of his rights and the effect of abandoning those rights. *Id.* Furthermore, the corollary is also true; namely, a defendant's subjective reasons for waiving his *Miranda* rights are irrelevant. *See Colorado v. Connelly,* 479 U.S. at 169–71, 107 S.Ct. 515. Thus, a defendant's mental state, education, background, and experience are irrelevant to that aspect of waiver that focuses on police conduct. Those factors may be relevant to a suspect's understanding of his rights,

but the voluntariness of his waiver relies on police overreaching or coercion. *Id.* at 170–71, 107 S.Ct. 515; *see also United States v. Male Juvenile,* 121 F.3d at 41. Thus:

> The inquiry whether a waiver is coerced "has two distinct dimensions." First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Colorado v. Spring,* 479 U.S. 564, 573, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987) (internal citations omitted).

On the other hand, the voluntariness inquiry under the due process clause focuses on " 'whether a defendant's will was overborne' by the circumstances surrounding the giving of a confession," *see Dickerson,* 530 U.S. at 434, 120 S.Ct. 2326 (internal citation omitted), or stated differently, whether a statement is the "free and unconstrained choice of its maker." *Green v. Scully,* 850 F.2d 894, 900 (2d Cir. 1988). To make this determination, the court must assess the totality of the circumstances surrounding the interaction between the police and suspect, including the characteristics of the accused, the conditions of the interrogation, and the police conduct. *See Dickerson v. United States,* 530 U.S. at 434, 120 S.Ct. 2326; *Tankleff v. Senkowski,* 135 F.3d 235, 245 (2d Cir. 1998).

Police trickery and deception are interrelated aspects of the voluntariness inquiry and are relevant to both the waiver and due process analysis. The issue is not, however, whether the police used tricks or deceit, but whether tricks or deceit led a suspect to believe

that he could speak without consequences (*Miranda* waiver) or whether they undermined his ability to make a rationale choice about confessing (due process). *See United States v. Gaines,* 295 F.3d at 299; *United States v. Male Juvenile,* 121 F.3d at 41; *United States v. Ruggles,* 70 F.3d 262, 265 (2d Cir. 1995); *United States v. Jaswal,* 47 F.3d 539, 542 (2d Cir. 1995) (*per curiam*). Thus, police statements that are merely common-sense factual observations are not material misrepresentations based on improper promises. *See United States v. Ruggles,* 70 F.3d at 265. Direct or implied promises to help are not coercive *per se. Green v. Scully,* 850 F.2d at 901. The failure to disclose the details of an investigation, or the fact that the suspect is a target of an investigation does not constitute affirmative deceit. *See Colorado v. Spring,* 479 U.S. at 575, 107 S.Ct. 851; *Deshawn v. Safir,* 156 F.3d 340, 349 (2d Cir. 1998). However, deliberate lies in response to a suspect's questions concerning the investigation or whether he is a target are probative factors demonstrating involuntariness. *See Lynumn v. Illinois,* 372 U.S. 528, 534–35, 83 S.Ct. 917, 9 L.Ed.2d 922 (1963); *Spano v. New York,* 360 U.S. 315, 323, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959); *United States v. Mitchell,* 966 F.2d 92, 100 (2d Cir. 1992).

It was uncontested that Petitioner was subjected to a custodial interrogation where he was arrested and questioned at the police station. It is also clear from the video of the interrogation that after asking Petitioner if he understood his *Miranda* rights, police began interrogating Petitioner regarding the incident before he actually acknowledged that he understood or waived his rights. By beginning to interrogate Petitioner before he waived his rights, the police clearly coerced Petitioner's statements. Petitioner also did not

impliedly waive his *Miranda* rights by responding to the initial police questioning where it was hostile and antagonistic, which was shocking and alarming to Petitioner.

Petitioner's interrogation was tainted by earlier police illegality in arresting him without probable cause. A police officer has probable cause to arrest when he has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). The validity of an arrest does not depend upon a finding that the arrested person is guilty. *Pierson v. Ray,* 386 U.S. 547, 555, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). Rather, a determination of the existence of probable cause "turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time." *Maryland v. Macon,* 472 U.S. 463, 470, 105 S.Ct. 2778, 86 L.Ed.2d 370 (1985) (internal citation omitted). The existence of probable cause may be determined as a matter of law provided there is no factual dispute regarding the pertinent events and the knowledge of the officers. *See, exempli gratia, Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118–19 (2d Cir. 1995) (affirming dismissal of false arrest claim on the ground that the facts supporting store owner's complaint of theft established probable cause).

Under the collective or imputed knowledge doctrine, an arrest or search is permissible where the actual arresting or searching officer lacks the specific information to form the basis for probable cause or reasonable suspicion but sufficient information to justify the arrest or search was known by other law enforcement officials initiating or involved with the investigation. *See United States v. Hensley,* 469 U.S. 221, 230–33, 105

S.Ct. 675, 83 L.Ed.2d 604 (1985); *United States v. Canieso,* 470 F.2d 1224, 1230 n. 7 (2d Cir. 1972).

"The rule exists because, in light of the complexity of modern police work, the arresting officer cannot always be aware of every aspect of an investigation; sometimes his authority to arrest a suspect is based on facts known only to his superiors or associates." *United States v. Valez,* 796 F.2d 24, 28 (2d Cir. 1986).

The collective knowledge doctrine was developed in recognition of the fact that with large police departments and mobile defendants, an arresting officer might not be aware of all the underlying facts that provided probable cause or reasonable suspicion but may nonetheless act reasonably in relying on information received by other law enforcement officials. *See Whiteley v. Warden, Wyoming State Penitentiary,* 401 U.S. 560, 568, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971) ("Certainly police officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause. Where, however, the contrary turns out to be true, an otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest"); *Hensley,* 469 U.S. at 230–33, 105 S.Ct. 675 (a *Terry* stop based on a flyer issued by a neighboring police department indicating that the suspect was wanted for investigation of a felony was permissible if "the officers who issued the flyer possessed probable cause to make the arrest"); *Williams v. United States,* 308 F.2d 326, 327 (D.C. Cir. 1962) ("The whole complex of swift modern communication in a large police department would be a futility if the authority of an individual officer was to be

circumscribed by the scope of his first hand knowledge of facts concerning a crime or alleged crime"); *United States v. Cutchin,* 956 F.2d 1216, 1217 (D.C. Cir. 1992) ("Within modern police departments, the officer who receives information justifying an individual's detention often is not the officer who acts on the information. Daily bulletins, computer messages and radio broadcasts alert officers in the field about those suspected of criminal activity.")

A primary focus in the imputed knowledge cases is whether the law enforcement officers initiating the search or arrest, on whose instructions or information the actual searching or arresting officers relied, had information that would provide reasonable suspicion or probable cause to search or arrest the suspect. *See Hensley,* 469 U.S. at 231, 105 S.Ct. 675 ("If the flyer has been issued in the absence of a reasonable suspicion, then a stop in the objective reliance upon it violates the Fourth Amendment"); *see also Cutchin,* 956 F.2d at 1218 (holding that the district court erred in excluding evidence of 911 tapes on which a police dispatcher allegedly relied in directing field officers to look for the suspect's car because the tapes were necessary to determine "whether the dispatcher had reasonable, articulable suspicion, without which [the field officer's] stop of Cutchin's car might not have been legal"); *Rogers v. Powell,* 120 F.3d 446 (3d Cir. 1997) ("The legality of a seizure based solely on statements issued by fellow officers depends on whether the officers who issued the statements possessed the requisite basis to seize the suspect.")

Thus, application of the imputed knowledge doctrine requires that at some point along the line, some law enforcement official—or perhaps some agglomeration of such officials—involved must possess sufficient information to permit the conclusion that a

search or arrest is justified. *Cf. United States v. Shareef,* 100 F.3d 1491, 1504 & n. 5 (10th Cir. 1996) (declining to extend collective knowledge doctrine where evidence showed officers had not communicated with each other; "[i]nformation scattered among various officers in a police department cannot substitute for possession of the necessary facts by a single officer related to the arrest") (*quoting State v. Cooley,* 457 A.2d 352, 355–56 (Del. 1983)) (internal quotations omitted).

The "fellow officer" rule is typically invoked in cases where the record is clear as to what the officer seeking backup reported. *See, exempli gratia, Martinez v. Simonetti,* 202 F.3d 625, 635 (2d Cir. 2000) (concluding that officers were entitled to rely on accounts narrated by other officers at the scene). Moreover, the New York Court of Appeals has held that an officer is entitled to rely on a fellow officer's report only when the reporting officer "has the requisite probable cause." *People v. Rosario,* 78 N.Y.2d 583, 588, 578 N.Y.S.2d 454, 457, 585 N.E.2d 766 (N.Y. 1991). If the arrest is challenged for lack of probable cause, the police bear the burden of establishing that the reporting officer had probable cause prior to issuing the relied-upon radio report. *Id.* This analysis has been adopted by the Second Circuit in holding that reliance on information from a 911 dispatcher did not create probable cause to justify the arresting officer's actions. *United States v. Colon,* 250 F.3d 130, 137 (2d Cir. 2001).

Reasonable suspicion may be based upon information from a confidential informant so long as the tip bears sufficient "indicia of reliability." *Adams v. Williams,* 407 U.S. at 147, 92 S.Ct. 1921. As in the probable cause context, courts must assess whether an informant's tip establishes reasonable suspicion under the totality of the circumstances

approach set forth in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), though obviously a lesser showing is required. *See Alabama v. White,* 496 U.S. 325, 328–29, 110 S.Ct. 2412 (1990). Although in *Gates* the Supreme Court abandoned the rigid two-pronged test of *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), the informant's "basis of knowledge" and "veracity" (*id est,* how he knows and why he should be believed) remain highly relevant to a determination of either probable cause or reasonable suspicion. *See White,* 496 U.S. at 328–29, 110 S.Ct. 2412.

When the informant's tip, standing alone, lacks sufficient indicia of reliability because it does not do enough to establish the informant's basis of knowledge and veracity, it may still support a finding of reasonable suspicion if sufficiently corroborated through independent police investigation. *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), provides the classic example. In *Draper,* a known and previously accurate informant told the police that Draper would arrive in Denver on a train from Chicago on one of two days carrying heroin. *Id.* at 309, 79 S.Ct. 329. He would be wearing a light-colored raincoat, brown slacks, and black shoes, and he habitually "walked real fast." *Id.* at 309, 79 S.Ct. 329 & n. 2. The informant gave no indication of the basis for his information. On one of the appointed days, the police in Denver observed a man matching Draper's description and wearing the predicted clothes get off a train from Chicago and begin walking quickly; they arrested him. *Id.* at 309–10, 79 S.Ct. 329. The Supreme Court held that the police had probable cause to arrest Draper because they had corroborated "every other bit" of the informant's tip and therefore had reasonable grounds to believe that

the remaining unverified bit—that Draper was carrying heroin—was true. *Id.* at 313, 79 S.Ct. 329.

Even a tip from a completely anonymous informant—though it will seldom demonstrate basis of knowledge and the veracity of an anonymous informant is largely unknowable, *see White,* 496 U.S. at 329, 110 S.Ct. 2412—can form the basis of reasonable suspicion or probable cause if it is sufficiently corroborated. In *Spinelli,* the Supreme Court cited *Draper* for the proposition that if an informant provided sufficient details, including predictions about the future actions of third parties, and those details are independently corroborated, the police could infer that the informant had some sort of inside information as his basis of knowledge. 393 U.S. at 416–17, 89 S.Ct. 584. Justice White, in his concurrence, stressed that *Draper* should not stand for the proposition that because some of the informant's tip proved to be true that the police could infer that the final critical fact was also true. In Justice White's view, corroboration did little to bolster veracity. *Id.* at 426–27, 89 S.Ct. 584 (White, J., concurring).

In *Gates,* however, the Court reinterpreted *Draper,* implicitly disavowing Justice White's limitation. Stressing the importance of predictive information, the Court held that corroboration of some of the information in the tip allows the police to reasonably infer that the remaining, unverified information is also true. *Gates,* 462 U.S. at 243–45, 103 S.Ct. 2317. Under the totality of the circumstances approach mandated by *Gates,* even a completely anonymous tip could support a finding of probable cause with a sufficient degree of corroboration. The degree of corroboration required for a finding of reasonable suspicion is obviously less. *White,* 496 U.S. at 330–31, 110 S.Ct. 2412.

The Supreme Court discussed reasonable suspicion based on tips by anonymous informants in two cases: *Alabama v. White,* 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990) and *Florida v. J.L.,* 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000). These cases represent two poles on the spectrum of the degree of corroboration needed and formed the framework for the district court's analysis. The district court in the instant case followed *J.L.,* in which the police received a completely anonymous tip that a young black man in a plaid shirt at a particular bus stop had a gun. 529 U.S. at 268, 120 S.Ct. 1375. There the Supreme Court held that the anonymous tip, plus corroboration of the fact that a black man with a plaid shirt was at the bus stop, did not constitute reasonable suspicion to stop and frisk the man. *Id.* at 271–72, 120 S.Ct. 1375.

In *White,* on the other hand, a completely anonymous informant told the police that the suspect would leave a particular apartment at a particular time and drive to a particular destination in a particular car carrying drugs. 496 U.S. at 327, 110 S.Ct. 2412. The police observed that the suspect leave the apartment building, get in the car and drive in the direction of the destination before stopping her. *Id.* The Court called it a close case but held that because the tip predicted with specificity the future movements of a third party, there was reasonable suspicion. *Id.* at 332, 110 S.Ct. 2412.

Where informants are known, however, a lesser degree of corroboration is required. *Compare Williams,* 407 U.S. at 146–47, 92 S.Ct. 1921 (upholding a *Terry* stop based on an uncorroborated tip from a known and previously reliable informant), *with White,* 496 U.S. at 331–32, 110 S.Ct. 2412 (holding that an anonymous tip justified a *Terry* stop because both innocent details and predictive information were corroborated). A known

informant's reputation may be assessed and he may be held accountable if his allegations turn out to be fabricated. *J.L.,* 529 U.S. at 270, 120 S.Ct. 1375. While a proven track record of providing reliable tips may serve to bolster an informant's veracity, past performance is not the only way to show veracity. *See United States v. Canfield,* 212 F.3d 713, 719–20 (2d Cir. 2000). The veracity of identified private citizen informants (as opposed to paid or professional criminal informants) is generally presumed in the absence of special circumstances suggesting that they should not be trusted. *See Caldarola v. Calabrese,* 298 F.3d 156, 165–66 (2d Cir. 2002); *United States v. Rollins,* 522 F.2d 160, 164 (2d Cir. 1975) (noting the "peculiar likelihood of accuracy" of a citizen informant's report).

Here, the putative "collective knowledge" of the investigating officers derived from watching Carter's interrogation. This was violative of *Bruton v. United States*, 391 U.S. 123 (1968), where extrajudicial statements given by Carter, who did not take the stand, were admitted into evidence against Petitioner and Petitioner was not afforded the opportunity to cross-examine Carter on his bias, veracity, basis of knowledge, or ability to observe, recall, and communicate. Importantly, the People never established that the investigating officers ordered Petitioner's arrest *after* Carter's accusation, and not before. The interrogation lasted roughly 20 hours and the investigating officers did not establish that they observed it in its entirety. Moreover, the interrogator related that he did not believe that Carter was being truthful; however, Carter's statements were the sole justification proffered in support of the arrest. Carter's statements were objectively devoid of evidentiary weight where he was an accomplice. *See, exempli gratia, United States v. Marks*, 368 F.2d 566 (2d Cir. 1966) (jury is to scrutinize accomplice testimony with special

care and act thereupon with caution). Additionally, Carter's statements were not contrary to his penal interest where he was clearly motivated to falsely implicate Petitioner and distance himself from the crime, and therefore this does not establish any trustworthiness. Specifically, Carter did not provide any details as to Petitioner's supposed involvement, and the police were not able to confirm Carter's allegations. Accordingly, Carter's statements were insufficient to establish any objectively justifiable suspicion of criminal activity.

Finally, Petitioner's statements to police were coerced where he was subjected to almost 24 hours of continuous, custodial interrogation in this matter and the police delayed his arraignment.

In *Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), the Supreme Court held that "absent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion" with respect to subsequent statements that the suspect makes after receiving *Miranda* warnings. *Id.* at 314, 105 S.Ct. 1285. Rather, "the admissibility of any subsequent statement should turn in these circumstances solely on whether it [was] knowingly and voluntarily made." *Id.* at 309, 105 S.Ct. 1285. Therefore, this court must consider whether the circumstances surrounding petitioner's unwarned confession were so coercive as to prevent him from making a subsequent knowing and voluntary waiver of his rights, thereby requiring the suppression of his post-*Miranda* confession. *See id.* at 309–14, 105 S.Ct. 1285; *see also Tankleff v. Senkowski,* 135 F.3d 235, 244 (2d Cir. 1998). While all custodial interrogations inherently involve "serious

pressures," *id.,* in determining the voluntariness of petitioner's post-*Miranda* confessions, the court must examine the totality of the circumstances. *See Tankleff,* 135 F.3d at 245. Specifically, these circumstances include the accused's characteristics, the conditions of the interrogation, and the conduct of the police. *United States v. Anderson,* 929 F.2d 96, 99 (2d Cir. 1991).

> The conduct of law enforcement officials includes consideration of
>
> the repeated and prolonged nature of the questioning or the failure to inform the accused of his constitutional rights, whether there was physical mistreatment such as beatings, or long restraint in handcuffs, and whether other physical deprivations occurred such as depriving an accused of food, water or sleep, or even of clothing, for a prolonged period. In addition ... such police conduct might include psychologically coercive techniques such as brainwashing or promises of leniency or other benefits.

*Green v. Scully,* 850 F.2d 894, 902 (2d Cir. 1988).

As set forth above, the police failed to ensure that Petitioner understood his *Miranda* rights or waived them. Moreover, Petitioner was detained in an interrogation room and interrogated for almost 24 hours, which is an inherently coercive amount of time. It is also clear that law enforcement's delay in arraigning Petitioner by way of conducting this unconstitutional interrogation deprived Petitioner of the assistance of counsel, contributing extensively to the coercive nature of the interaction.

Accordingly, this Honorable Court should grant the within writ and release Petitioner.

**III. Claim Three—Petitioner Was Denied His Federal Constitutional Right to Due Process under the Fifth, Sixth, and Fourteenth Amendments Where the Trial Court Summarily Denied Petitioner's Repeated Requests to Represent Himself.**

Petitioner respectfully submits that the State court's adjudication of this claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court, and based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The State court failed to identify the correct, governing legal rule and unreasonably applied its chosen rule to the facts. Further, for the reasons set forth below, Petitioner has forwarded clear and convincing evidence that the State court's decision is not entitled to the presumption of correctness.

Under the Sixth Amendment to the Constitution, an accused is guaranteed the right to represent himself. *See Faretta v. California,* 422 U.S. 806, 819-20, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). A criminal defendant is entitled to proceed *pro se* if he "knowingly, voluntarily, and unequivocally" waives his right to appointed counsel. *Johnstone v. Kelly,* 808 F.2d 214, 216 (2d Cir. 1986) (citing *Faretta,* 422 U.S. at 835-36, 95 S.Ct. 2525). Assuming that a defendant's waiver meets this standard and the matter is raised prior to the start of the trial, "[t]he right of a defendant in a criminal case to act as his own lawyer is *unqualified ....*" *Williams v. Bartlett,* 44 F.3d 95, 99 (2d Cir. 1994) (quoting *United States ex rel. Maldonado v. Denno,* 348 F.2d 12, 15 (2d Cir. 1965)) (emphasis in *Williams*). Moreover, a court's denial of the right to self-representation is not subject to harmless error

analysis and requires automatic reversal of a criminal conviction. *See Johnstone,* 808 F.2d at 218.

The right to self-representation attaches only if it is asserted "clearly and unequivocally." *Faretta,* 422 U.S. at 835, 95 S.Ct. 2525. "Once asserted, however, the right to self-representation may be waived through conduct indicating that one is vacillating on the issue or has abandoned one's request altogether." *Williams,* 44 F.3d at 100 (citing *Brown v. Wainwright,* 665 F.2d 607, 611 (5th Cir. 1982) (*en banc*)). Thus, "[a] waiver may be found if it reasonably appears to the court that defendant has abandoned his initial request to represent himself." *Brown,* 665 F.2d at 611. However, to avoid waiver of a previously invoked right to self-representation, a defendant need not "continually renew his request to represent himself even after it is conclusively denied by the trial court. After a clear denial of the request, a defendant need not make fruitless motions or forego cooperation with defense counsel in order to preserve the issue on appeal." *Id.* at 612; *accord United States v. Arlt,* 41 F.3d 516, 523 (9th Cir. 1994) ("[O]nce a defendant has stated his request clearly and unequivocally and the judge has denied it in an equally clear and unequivocal fashion, the defendant is under no obligation to renew the motion.")

As set forth in further detail below, the trial court's orders with regard to discovery and Petitioner's requests to proceed *pro se* deprived Petitioner of the right to present a defense.

The constitutional right to present a complete defense at a criminal trial was clearly established at the time of the Appellate Division's decision. *See Taylor v. Illinois,* 484 U.S. 400, 408, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988); *Rock v. Arkansas,* 483 U.S. 44, 51-53,

107 S.Ct. 2704, 97 L.Ed.2d 37 (1987); *Crane v. Kentucky,* 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986); *Chambers v. Mississippi,* 410 U.S. 284, 294, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). For the exclusion of evidence to violate this right by denying the accused a fundamentally fair trial, the evidence must be "material," in the constitutional sense that it "creates a reasonable doubt that did not otherwise exist" as evaluated "in the context of the entire record." *United States v. Agurs,* 427 U.S. 97, 112-13, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). "If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial." *Id.* But "if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt." *Id.* at 113.

As with many rights, the right to present a defense is not unlimited. The criminal defendant "must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers,* 410 U.S. at 302, 93 S.Ct. 1038. The defendant "does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor,* 484 U.S. at 410, 108 S.Ct. 646. Although "federal habeas corpus relief does not lie for errors of state law," *Estelle v. McGuire,* 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (quotation marks omitted), the exclusion of evidence pursuant to an evidentiary rule "may not be arbitrary or disproportionate" to the purpose that the rule is designed to serve, *Rock,* 483 U.S. at 55-56, 107 S.Ct. 2704.

Here, Petitioner related to the court that he wanted to represent himself on March 11, 2014, due to trial counsel's dereliction of duty. The court did not engage in any inquiry

or analysis as to Petitioner's statements. Petitioner reiterated his request on March 18, 2014. The court erroneously related that Petitioner did not have the absolute right to represent himself and again failed to conduct in any sort of inquiry. On April 29, 2014, the court appointed new counsel instead of permitting Petitioner to represent himself. On May 20, 2014, the court stymied Petitioner's requests to address the court in any meaningful manner, directing all communications to come from newly appointed counsel. Petitioner reiterated his request to represent himself. The court failed to engage in any inquiry and erroneously related to Petitioner that he did not have the right to represent himself.

On June 24, 2014, Petitioner related to the court he wanted to represent himself. The trial court failed to conduct any inquiry. On July 1, 2014, counsel related that it was not clear whether Petitioner wanted counsel to continue to represent him, but related that he would represent Petitioner for the limited purpose of a *People v. Huntley*, 15 N.Y.2d 72 (N.Y. 1965), hearing. Petitioner related during the first day of the *Huntley* hearing on September 12, 2014, that newly appointed counsel was derelict in his duties. The court finally conducted an inquiry into Petitioner's request to represent himself, but then offered Petitioner a new attorney, and Petitioner accepted. Newly appointed counsel represented Petitioner until the start of trial, at which point the trial court finally granted Petitioner's request to represent himself.

However, by that point, Petitioner had been stymied in his ability to adequately investigate and prepare his case where all prior counsel had failed to do the same, and pretrial protective orders prevented Petitioner from access to evidence to prepare for trial. Petitioner was never provided full discovery due in part to the redacted discovery and

protective orders entered in this case. Petitioner was thus left without ample time or resources to conduct a sufficient investigation which would have revealed evidence of Petitioner's innocence.

Petitioner's acceptance of the trial court's offer to appoint an attorney for purposes of pretrial litigation did not defeat his right to represent himself, or in any way waive that right, since Petitioner knew that his requests to represent himself were futile based on the trial court's consistent refusal to even consider Petitioner's request.

Accordingly, this Honorable Court should grant the within writ and release Petitioner.

**IV. Claim Four—Petitioner Was Denied His Federal Constitutional Right to Due Process under the Fifth, Sixth, and Fourteenth Amendments Where the Prosecutor Violated Petitioner's Right to Testify in His Own Defense, His Right to Silence, and His Right to Be Free from Unreasonable Searches by Cross-Examining Regarding Petitioner's Refusal to Submit to a Warrantless DNA Test.**

Petitioner respectfully submits that the State court's adjudication of this claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court, and based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The State court failed to identify the correct, governing legal rule and unreasonably applied its chosen rule to the facts. Further, for the reasons set forth below, Petitioner has

forwarded clear and convincing evidence that the State court's decision is not entitled to the presumption of correctness.

The appropriate standard of review for a claim of prosecutorial misconduct on a writ of habeas corpus is "the narrow one of due process, and not the broad exercise of supervisory power." *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 642, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974)). Accordingly, the Supreme Court has instructed federal courts reviewing habeas claims brought by state prisoners and premised upon prosecutorial misconduct in summation to distinguish between "ordinary trial error of a prosecutor and that sort of egregious misconduct ... amount[ing] to a denial of constitutional due process." *Donnelly,* 416 U.S. at 647-48, 94 S.Ct. at 1873-74 (citations omitted). Under the standard of *Donnelly,* the question before a federal appellate court is whether "the prosecutorial remarks were so prejudicial that they rendered the trial in question fundamentally unfair." *Garofolo v. Coomb,* 804 F.2d 201, 206 (2d Cir. 1986); *see Donnelly,* 416 U.S. at 645, 94 S.Ct. at 1872; *cf. United States v. Alfonso-Perez,* 535 F.2d 1362, 1366 (2d Cir. 1976) (prosecutor's suggestion, while commenting on credibility of government witness, that "the man in the room" could have "prove[d] otherwise, but did not" implicitly called for an inference from defendant's failure to testify); *United States v. Drummond,* 481 F.2d 62, 63-64 (2d Cir. 1973) (reversing conviction where, among other things, prosecutor labeled defendant and defense witnesses as liars).

Evidence of a party's consciousness of guilt may be relevant if reasonable inferences can be drawn from it and if the evidence is probative of guilt. *United States v. Perez*, 387

F.3d 201, 209 (2d Cir. 2004), *citing* 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence,* § 401.08 (2d ed. 1997). Such evidence is admissible if the court (1) determines that the evidence is offered for a purpose other than to prove the defendant's bad character or criminal propensity, (2) decides that the evidence is relevant and its relevance is not outweighed by other factors, and (3) provides an appropriate instruction to the jury as to the limited purposes for which the evidence is introduced, if a limiting instruction is requested. *United States v. Mickens,* 926 F.2d 1323, 1328-29 (2d Cir. 1991).

The Second Circuit has upheld the admission of various kinds of evidence on the ground that it demonstrated consciousness of guilt. For example, proof of defendant's flight after a charged crime occurred may be admissible even though that evidence might be subject to varying interpretations. *See United States v. Ayala,* 307 F.2d 574, 576 (2d Cir. 1962) (Marshall, J.) Likewise, it has upheld the admission of evidence of attempted witness or jury tampering as probative of a defendant's consciousness of guilt. *See Mickens,* 926 F.2d at 1329. While falsehoods told by a defendant in hope of evading prosecution are not themselves sufficient evidence on which to base a conviction, such falsehoods may strengthen an inference of guilt supplied by other evidence. *See United States v. Glenn,* 312 F.3d 58, 69 (2d Cir. 2002); *United States v. Johnson,* 513 F.2d 819, 824 (2d Cir. 1975). However, an individual has the right to refuse consent to a search under the Fourth Amendment. *United States v. Garcia*, 56 F.3d 418 (2d Cir. 1995).

Here, Petitioner already related to law enforcement that the watch discovered at the scene was his. Thus, there was no need to independently verify this assertion through DNA testing. It is no surprise that law enforcement ultimately discovered Petitioner's DNA on

his watch. Importantly, though, Petitioner's DNA was not found in the residence where the crime occurred or on any of the evidence linked to the crime. The DNA test would merely reveal and confirm what Petitioner already knew, that he was innocent. Petitioner was aware at the time of law enforcement's request that DNA testing would not implicate him in the crime. Thus, Petitioner's legitimate invocation of his right to refuse consent to a search had no bearing on whether Petitioner believed he was innocent or guilty of the crime. Petitioner's refusal to consent to a search of his DNA can therefore not be said to be evidence of consciousness of guilt. In fact, the DNA results were non-inculpatory, which defeats any supposed good faith the prosecution could have had in accusing Petitioner of refusing the DNA test because he feared his DNA would be discovered at the crime scene. The prosecution's argument was not based on facts in evidence, and thus constituted improper misconduct and improperly countervailed Petitioner's right to present a defense.

Under the totality of the circumstances, the cumulative effect of the prosecutor's persistent and clearly improper remarks to this effect amounted to such egregious misconduct as to render Petitioner's trial fundamentally unfair. Moreover, it is by no means clear or even probable that Petitioner would have been convicted absent the prosecutor's misconduct. As set forth above, Carter was not a credible witness.

Accordingly, this Honorable Court should grant the within writ and release Petitioner.

**V.     Claim Five—Petitioner Was Denied His Federal Constitutional Right to Due Process Under the Fifth, Sixth, and Fourteenth Amendments Where the Trial Court Violated Petitioner's Right to Testify in His Own Defense by Instructing the Jury that Petitioner Was an "Interested Witness."**

Petitioner respectfully submits that the State court's adjudication of this claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court, and based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The State court failed to identify the correct, governing legal rule and unreasonably applied its chosen rule to the facts.  Further, for the reasons set forth below, Petitioner has forwarded clear and convincing evidence that the State court's decision is not entitled to the presumption of correctness.

Under our system of criminal justice, it is "axiomatic and elementary" that defendants are entitled to a presumption of innocence. *Coffin v. United States,* 156 U.S. 432, 453, 15 S.Ct. 394, 39 L.Ed. 481 (1895); *see Estelle v. Williams,* 425 U.S. 501, 503, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976). "To implement the presumption," the Supreme Court has warned, "courts must be alert to factors that may undermine the fairness of the fact-finding process." *Estelle,* 425 U.S. at 503, 96 S.Ct. 1691. This requires the courts to "place[ ] out of bounds practices that threaten to dilute the presumption of innocence." *United States v. Gaines,* 457 F.3d 238, 245–46 (2d Cir. 2006); *see, exempli gratia, United States v. Dove,* 916 F.2d 41, 46 (2d Cir. 1990) (finding that a jury instruction's use of a

hypothetical inquiry into "whether Jack shot Mary," which was intended to illustrate the concept of circumstantial evidence, was impermissible because it assumed Jack's guilt); *United States v. Oshatz,* 912 F.2d 534, 539 (2d Cir. 1990) (finding that while guilt-assuming hypothetical questions, posed on cross-examination to a defendant's character witnesses, have probative value in assessing the credibility of the witness, they are "prohibited because [they] create[ ] too great a risk of impairing the presumption of innocence").

There have been two cases arising out of federal prosecutions in which the Second Circuit, interpreting Supreme Court precedent, reversed a conviction or found harmless error based on instructions that singled out a defendant's interest through an interested witness charge. *See United States v. Brutus,* 505 F.3d 80 (2d Cir. 2007); *United States v. Gaines,* 457 F.3d 238 (2d Cir. 2006). In these cases, the Court interpreted the Supreme Court's decisions in *Reagan v. United States,* 157 U.S. 301, 15 S.Ct. 610, 39 L.Ed. 709 (1895), and *Hicks v. United States,* 150 U.S. 442, 14 S.Ct. 144, 37 L.Ed. 1137 (1893), and held that certain language commonly included in interested witness charges improperly dilutes the presumption of innocence. *See Brutus,* 505 F.3d at 86; *Gaines,* 457 F.3d at 245–46.

Simply stated, an instruction that the defendant's interest in the outcome of the case creates a motive to testify falsely impermissibly undermines the presumption of innocence because it presupposes the defendant's guilt. *Gaines,* 457 F.3d at 246–47. This is no less true where the instruction omits additional language specifically cautioning the jury to carefully scrutinize and weigh the defendant's testimony. *Id.*

Here, Petitioner testified on his own behalf and in conformance with the forensic and physical evidence that he was not in the house during the shooting and that he did not know of his codefendants' plan to rob or murder the decedent. The trial court instructed the jury that Petitioner had an interest in the outcome of the case, especially where he testified in support of his own defense, and the prosecutor argued during closing that Petitioner had a motive to lie by virtue of the fact that he faced murder charges and serious penalties, and therefore was an interested witness. This instruction clearly impugned Petitioner's right to testify, the presumption of innocence, and Petitioner's right to present a defense. By singling out Petitioner's testimony in its instruction, the court clearly failed to apply proper precedent.

Accordingly, this Honorable Court should grant the within writ and release Petitioner.

## VI. Claim Six—Petitioner Was Denied His Federal Constitutional Right to Due Process Under the Fifth, Sixth, and Fourteenth Amendments Where the Trial Court Failed to Instruct the Jury on the Definition of Robbery in Charging on Felony Murder.

Petitioner respectfully submits that the State court's adjudication of this claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court, and based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The State court failed to identify the correct, governing legal rule and unreasonably applied its chosen rule to the facts. Further, for the reasons set forth below, Petitioner has

forwarded clear and convincing evidence that the State court's decision is not entitled to the presumption of correctness.

A petitioner must satisfy two requirements to establish that an erroneous jury charge deprived him of a right to a fair trial. First, the petitioner must show that he "was erroneously deprived of a jury instruction to which he was entitled under state law." *Jackson v. Edwards,* 404 F.3d 612, 621 (2d Cir. 2005) (*quoting Davis v. Strack,* 270 F.3d 111, 123 (2d Cir. 2001)). Second, he must demonstrate that the omitted instruction "so infected the entire trial that the resulting conviction violates due process." *Estelle,* 502 U.S. at 71, 112 S.Ct. 475 (*quoting Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)). The failure to instruct on an element of the offense is an error of constitutional dimension as required for relief on a federal petition for writ of habeas corpus. of habeas corpus. *Lynch v. Dolce*, 789 F.3d 303 (2d Cir. 2015).

Here, the jury acquitted Petitioner of intentional murder but convicted him of felony murder on the basis that the death supposedly occurred during the course of a robbery. However, the trial court never instructed the jury on what the definition or elements of robbery were. Thus, the jury was legally incapable of determining whether Petitioner was guilty of felony murder. The erroneous jury instruction had an extremely prejudicial effect where it caused the jury to convict Petitioner of felony murder based on robbery despite the fact that the assailants did not retrieve any of the decedent's valuables or cash, though they had the opportunity to do so and nothing stood in their way if they indeed intended to steal. (T 540, 602, 725, 733, 761, 979-980, 1096, 1168). The text message exchange

between Carter and Tucker evidenced only a homicidal, not a thieving, intent. It is clear that the jury convicted Petitioner of felony murder based on the erroneous jury instruction.

Accordingly, this Honorable Court should grant the within writ and release Petitioner.

## CONCLUSION

WHEREFORE, based on the foregoing, this Honorable Court should grant Petitioner's Petition for Writ of Habeas Corpus.

Dated: October 17, 2023

Respectfully submitted,

KOCH LAW, PLLC

/s/ Lee Koch

By: _____

Lee Koch
Attorney for the Petitioner

# CERTIFICATE OF SERVICE

Case Name: Shaquill Battle on Habeas Corpus

I hereby certify that on ___October 17,___, 2023, I electronically filed the following document with the Clerk of the Court using the CM/ECF system:

**VERIFIED PETITION FOR WRIT OF HABEAS CORPUS; MEMORANDUM OF POINTS AND AUTHORITIES**

I also served Petitioner's **VERIFIED PETITION FOR WRIT OF HABEAS CORPUS; MEMORANDUM OF POINTS AND AUTHORITIES**, by causing to be placed a true copy thereof, enclosed in a sealed envelope with postage thereon fully prepaid, in the United States mail or via Federal Express, addressed as follows:

Shaquill Battle, DIN No. 15B2077
Attica Correctional Facility
369 Exchange Street
Attica, NY 14011

I declare under penalty of perjury that the foregoing is true and correct, and this declaration was executed at Los Angeles, California, on ___October 17___, 2023.

/s/ Lee Koch
_____
Lee Koch